MELVILLE E. SMILIE, APPELLANT, v. ELIAKIM P. WALTON.

*Contract.    General Assembly Reporters.    Statute.*

The plaintiff agreed with the defendant, a newspaper publisher, to report the proceedings of the senate in 1866, at two dollars per day, and performed according to the contract. The last day of the session the general assembly voted "That the reporters of the senate and house receive from the state, for their services the present session, the same pay as is allowed to members of the general assembly," and under this vote the plaintiff received the same from the state. *Held,* that this vote was not intended to inure to the benefit of the employers of the reporters, and payment by the state under said vote to the plaintiff did not operate as payment *pro tanto* for his services under the contract.

ASSUMPSIT for work and labor. Plea, the general issue, and notice of payment, and offset of money had and received. Trial by the court, September term, 1867, PECK, J., presiding.

It appeared that, a few days before the session of the legislature commenced in October, 1866, the plaintiff and the defendant made a bargain, by which the plaintiff was to report for the defendant the proceedings of the senate during the then coming session of the legislature, daily, for which the defendant agreed to pay the plaintiff $2 per day. The plaintiff performed the services according to the contract and to the satisfaction of the defendant, and, on the day of the final adjournment of the legislature or the next day, presented his bill for his services and requested payment, which the defendant refused. The plaintiff has never been paid anything for these services, unless the facts hereinafter stated amount in law to payment.

The defendant put in as evidence a joint resolution of the legislature (Laws of Vermont, 1866, p. 91, No. 85). It appeared that this resolution was introduced and passed on the night of the final adjournment, to the effect that "the reporters of the senate and house receive from the state, for their services the present session, the same pay as is allowed to members of the general assembly." It appeared that during that session of the legislature there was another reporter of the senate proceedings, employed by Mr. Atkins for that purpose, who reported for him, and two in the house of representatives, who reported the house proceedings under similar employment. None of these reporters or their em-

ployers were employed by the state, or by either branch of the legislature, or by any officer of the state. Immediately after the passage of the resolution, on the same evening, the plaintiff and all the others above mentioned who had thus reported, went into the state treasurer's office, and there found their names registered on a book, and were told that each was entitled, under this resolution, to $123, which sum each thereupon received from the treasurer, and receipted the same on the book, by each signing his name. It appeared that the whole period of the session of the legislature, including Sabbaths and adjournments, was forty-one days. The last business session was Monday evening, when the resolution was passed, although the final formal adjournment was the next morning at 8 o'clock. It appeared from the testimony of the defendant, who was a witness in his own behalf, that during the session he published the reports which the plaintiff furnished him, in his daily newspaper, published at Montpelier, publishing the forenoon proceedings in his evening edition, and the afternoon proceedings in his morning edition; that he had published such paper for some twenty years or more, in connection with a weekly paper; that when he started it, it was at the instance or suggestion of some individuals who were members of the legislature, with the expectation that the proceedings of the legislature would be published in it, and they were so published; that he, when he did not report the proceedings himself, hired it done at his own expense; that he made no charge to the state for it, nor received anything from the state otherwise than in the manner following: previous to 1861, when the state settled with him and paid his bills, the auditor was in the habit, under the advice of the committee on claims, of allowing him for daily papers furnished to members during the session, a sum which he thought would be right, to cover the expense of reporting, under the form of a charge for daily papers; that in 1861 another newspaper establishment in Montpelier, the Freeman office, commenced publishing a daily and reporting the proceedings, and some other dailies, and at the same time the Argus published here, did the same; and that since then the state has put all the papers on the same footing, and none of them have been paid anything for reporting, in any form;

·but the various papers have procured the reports at their own expense; as they .chose, the weekly papers. in . distant parts of the .state· extracting portions from the reports published.in the papers here, or abbreviating them, and publishing.in such weekly papers. It appeared that in one instance· prior to 1861 the legislature, at ·the close of the session, voted to pay for reporting for that session, and the defendant was compensated in that way for reporting that year. It appeared that another year [whether before or since 1861 the defendant could not tell], the . defendant hired one. Lamb to· report for him,. and he did . so at·a. price previously .stipulated ·between him and the defendant, and at the .close of the session. the legislature voted to· pay the reporters, and Lamb received of the state the sum so voted, and the defendant also. paid.him. for reporting, as he agreed, without making any claim on account of the sum received. by Lamb from the state.under the vote ; and that after that, in some instances, when the. defendant · contracted with persons to report for him, he had a stipulation that, if the state paid, he should not; but it was not claimed that there was any such stipulation. with the plaintiff.

All this evidence, beyond the · direct proof of the contract and the performance of the service and. the demand of payment, was received under objection by the plaintiff.

It appeared that the defendant, on the occasion, in question, received all the pay from the state that he ever. expected, till after that vote was passed, .and all that he would have received if no such· vote had been .passed. The plaintiff was entirely ignorant of the practice and mode of dealing between the defendant. and the legislature, and as to the. terms of . the defendant's bargains with other reporters. During the time the plaintiff was reporting, ·he, at the request of Mr. Willard, the editor of the Freeman, furnished reports of the proceedings of the senate for him, which ·were published in the Freeman, the proceedings being published in that paper during the session, and for this service Mr. Willard promised to pay him, no price being stipulated. It also appeared that Mr. Atkins, the editor of the Argus, a newspaper published at Montpelier, had a reporter in the senate, hired by him to report the senate proceedings, which he published in his paper

Smilie *v.* Walton.

·during the session. It appeared that the plaintiff had no knowl
·edge or expectation that the state were going to vote him anything, till the resolution was introduced or about that time, nor
had he any knowledge that the state ever voted anything to the
reporters, till he heard it spoken of about that time, or some
time during the session, that they had in one or two instances
done it.

The defendant's counsel claimed that the voting of the money
under that resolution and the receipt of it by the plaintiff, op
·erated as a payment of the plaintiff's demand, and that the
defendant was entitled to recover the balance over and above
$2 per day, under his plea in offset against the plaintiff, or, if
not a payment, then that the defendant was entitled to recover
the $123 in offset, and have a judgment for the balance over
·and above the plaintiff's claim. The plaintiff claimed that the
$123 was a personal matter of his own, and did not affect his
right to recover his $2 per day of the defendant; and the court
so found and decided, to which the defendant excepted.

The plaintiff claimed to recover for thirty-five days. It was a
little uncertain as to the number of days the senate was in actual
·session and the plaintiff actually reported, but the court esti
·mated it at thirty days, and rendered judgment for the plaintiff
·for $60 and interest.

*Paul Dillingham*, for the defendant, cited *Hodgson* v. *Williams*,
6 Esp., 29; *Tenant* v. *Elliott*, 1 B. & P., 3; *Farrar* v. *Russell*,
*Ib.*, 296.

*M. E. Smilie, pro se*, cited *Henry* v. *Tilson*, 17 Vt., 479; 45
Me., 507; *Barker* v. *Esty et al. and trustee*, 19 Vt., 131; 2
Beasley (13 N. J. Chancery), 277; 35 Pa., 111; *Phelps* v.
*Bulkeley*, 20 Vt., 17; 24 Wend., 387; 2 Denio, 26; *Bean* v.
·*Jones*, 8 N. H., 149; 10 Leigh, 597; 20 Vt., 595.

The opinion of the court was delivered by

WILSON, J. The general question in this case is whether the
·voting of the money by the legislature and the receipt of it by the
plaintiff, operated as a payment of, or legal offset to, the plaintiff's

12

demand for services rendered by him for the defendant under the contract. Whether the defendant can avail himself of the defense set up, must depend upon the terms and effect of his contract with the plaintiff, and the construction to be given the resolution under which the plaintiff received the money. The plaintiff by the terms of the contract was obligated to attend each daily session of the senate during that general session and report to the defendant the proceedings of that body. There is nothing in the terms of the contract, as disclosed by the bill of exceptions, tending to show that the plaintiff was obligated to continue in the service of the defendant any longer each day than was necessary to obtain and furnish the defendant a correct report, or copy of the plaintiff's report, of the proceedings of the session. The plaintiff was, therefore, at liberty to engage to furnish and furnish other newspaper publishers with as many copies of his reports as his time would allow consistently with the service he had obligated himself to perform for the defendant. The plaintiff, by consent of the senate, commenced reporting their proceedings, and furnished the defendant with a copy of each daily session of them, to the satisfaction of the defendant. This constituted full performance by the plaintiff of his contract, and the defendant became indebted to the plaintiff for the stipulated price. The legislature, at the close of the session, without solicitation from the plaintiff, and, it would seem, without any idea or thought as to whether the plaintiff was relying upon other parties for compensation as reporter, and without making such inquiry as prudent men would make in their own private matters, or such as would have disclosed the liability of other parties to pay the reporters, assumed that the reporters of both branches of the legislature were depending upon the generosity of that body, and passed the following resolution, viz.: " That the reporters of the senate and house receive from the state, for their services the present session, the same pay as is allowed to members of the general assembly." Upon the authority of this resolution, the state treasurer tendered to the several reporters (including the plaintiff), and they severally received and receipted, the money which the resolution provided for them. The plaintiff received the money as an act of generosity on the part of

the legislature, as a matter personal to himself, and not in satisfaction of any debt which the defendant or any other person had incurred by special contract for copies of the plaintiff's reports for publication.

Upon the facts of this case, there is evident equity in favor of the defendant, to have some allowance on the plaintiff's demand, in consideration of the money so received from the state. The equity in favor of the defendant is, perhaps, no stronger than it is in favor of the other newspaper publishers who obtained reports of those proceedings through the agency of the plaintiff, and from others whom the general assembly recognized as reporters. But we have not been able to devise any means by which the defendant could avail himself of that money as a defense to this suit. There is no privity of contract between the plaintiff or the defendant and the state. The legislature did not pay the money to the plaintiff in satisfaction of his claim against the defendant, for they had no knowledge of any arrangement or contract between these parties in respect to reporting their proceedings, nor that any liability had been incurred by other parties to the reporters. It is true that the defendant and other newspaper publishers received the proceedings through the agency of the plaintiff and other reporters ; but it is plain, from the resolution under which the money was paid, that the word *reporters*, as used in that resolution, means the young men who appeared in the senate chamber, or hall of the house, and acted, and were known and recognized by the general assembly, as reporters of their proceedings. Neither the defendant nor Willard nor Atkins is known or recognized by the resolution. The notice to the plaintiff and other reporters to appear, and receive and receipt the money, shows how it was understood at that time by officers of the state. If the legislature had intended to pay the newspaper publishers where they had employed and agreed to pay the reporters, or intended that payment to the reporters should inure to the benefit of such newspaper publishers as had incurred a liability to the reporters for copies of the proceedings, some provision of the kind would have been inserted in the resolution.

We find no error in the proceedings of the county court, and the judgment of that court is affirmed.